**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **GLENDA ROBINSON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:16-cv-174** |
| | ) | |
| **G D C, INC.,** *et al.,* | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

In this employment dispute, plaintiff Glenda Robinson alleges that defendants (i) terminated her employment in violation of the Family and Medical Leave Act ("FMLA"), (ii) discriminated against her on the basis of race in violation of 42 U.S.C. § 1981 and Title VII, (iii) fostered a hostile work environment in violation of Title VII, (iv) intentionally inflicted emotional distress, (v) violated the Fair Labor Standards Act ("FLSA"), and (vi) were unjustly enriched. But none of those alleged violations of law are at issue here now. Rather, before the filing of any Rule 12 motions, before answering the Amended Complaint, and before the taking of any discovery, the parties are quarreling over the application of Rule 4(m), Fed. R. Civ. P.

Effective December 1, 2015, Rule 4(m) was amended to shorten the time for service of process from 120 days to 90 days. Plaintiff's counsel failed to adjust his internal system for keeping track of service of process to account for this change, and as a result plaintiff failed to serve process within 90 days of the filing of her Complaint. In light of this failure, on May 23, 2016—three days after Rule 4(m)'s 90-day deadline—an order issued directing plaintiff to show cause why the Complaint should not be dismissed without prejudice. The very next day, plaintiff filed an Amended Complaint and served it, along with the original Complaint, on all defendants. Thus, service was tardy by only four days. A few days later, on May 27, plaintiff filed a response

1

to the show cause order explaining the reason for the delay in serving process. Defendants then filed an opposition, arguing that plaintiff's excuse for the delay was not *good* cause and therefore insufficient to excuse the failure to effect timely service of process. Plaintiff replied. Defendants sur-replied and requested oral argument. All told, the parties filed *four briefs* fighting about *four days*.

After oral argument, a bench ruling and order issued extending plaintiff's time to serve process to May 25, the day after service, thus deeming plaintiff's Complaint and Amended Complaint timely served. Plaintiff then represented that, given the timeliness of service of the Amended Complaint, defendants' failure to file a responsive pleading meant defendants were in default. So an order issued extending defendants' time to file responsive pleadings. This Memorandum Opinion further elucidates the reasons for these rulings.

## I.

Rule 4(m) governs the time for service of process. The Rule provides, in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Interpreting a Federal Rule of Civil Procedure is no different from interpreting a statute; one "assumes that the ordinary meaning of the…language accurately expresses the legislative purpose." *See Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013) (interpreting Rule 54(d)(1), Fed. R. Civ. P.) (internal quotations and alterations omitted). Thus, "the starting point…is the language of the [Rule] itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). And in this respect, it is "fundamental" that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."

*Perrin v. United States*, 444 U.S. 37, 42 (1979). But at the same time, proper interpretation proceeds "with reference to the…context, 'structure, history, and purpose'" of the Rule, "not to mention common sense." *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (quoting *Maracich v. Spears*, 133 S. Ct. 2191, 2209 (2013)).

## A.

Rule 4(m) makes unambiguously clear—and the parties agree—that if plaintiff can show good cause for the failure to serve process within 90 days, then the time for service of process "must" be extended. The parties dispute, however, whether good cause exists on this record.

Good cause is a legal term of art. *See* Webster's Third New International Dictionary 978 (1993) ("a cause or reason *sufficient in law*") (emphasis added). Generally, legal terms of art are given their established meaning in the legal context. *See, e.g., McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 342 (1991). Thus, "good cause" as used in Rule 4(m) refers to a legally sufficient ground or reason based on *all* relevant circumstances. *See Madden v. Texas*, 498 U.S. 1301, 1305 (1991) (good cause is a "case-by-case" determination with many relevant factors) (Scalia, J., in chambers); Webster's Third New International Dictionary 978 (1993) ("one that is based on equity or justice or that would motivate a reasonable man under all the circumstances"); Black's Law Dictionary 623 (5th ed. 1979) (good cause "depends upon [the] circumstances of [an] individual case").

Defendants argue that the Amended Complaint must be dismissed because attorney negligence in serving process is not good cause. In other words, defendants seize upon a single fact of this case—that the failure to serve is attributable to an error by plaintiff's counsel—and argue that this fact alone is dispositive. This argument must fail; it is wholly inconsistent with the meaning of "good cause," which necessarily requires courts to consider all relevant facts and

circumstances. Indeed, courts have identified multiple factors that must be considered—not all of which will be present in every case—to determine whether good cause exists. Among the many factors bearing on the good cause inquiry are (i) the possibility of prejudice to the defendant, (ii) the length of the delay and its impact on the proceedings, (iii) the reason(s) for the delay and whether the delay was within the plaintiff's control, (iv) whether the plaintiff sought an extension before the deadline, (v) the plaintiff's good faith, (vi) the plaintiff's *pro se* status, (vii) any prejudice to the plaintiff, such as by operation of statutes of limitation that may bar refiling, and (viii) whether time has previously been extended. *See, e.g., Kurka v. Iowa Cnty., Iowa*, 628 F.3d 953, 959 (8th Cir. 2010); *Newby v. Enron Corp.*, 284 F. App'x 146, 149-51 (5th Cir. 2008); *Carter v. Keystone*, 278 F. App'x 141, 142 (3d Cir. 2008); *Melton v. Wiley*, 262 F. App'x 921, 924 (11th Cir. 2008); 4B Wright & Miller, Federal Practice & Procedure: Civil § 1137 at 349 n.24 (2015) (collecting cases elaborating relevant factors).

These factors, applied here, point persuasively to the existence of good cause to allow service of process four days late. Defendants have not suggested that they will be prejudiced by allowing this case to proceed; for example, the delay has not been so significant that defendants cannot now mount an effective defense. Indeed, the delay in serving process was relatively short—a mere four days—which is far below the 120-day period to serve process that the Federal Rules of Civil Procedure formerly embraced as reasonable. Although the delay is ultimately traceable to plaintiff's counsel's negligent failure to update his method of keeping track of service of process to reflect Rule 4(m)'s new 90-day timeframe, it is clear that plaintiff's counsel acted in good faith. Specifically, the record reflects that plaintiff served process the day after the show cause order issued. Plaintiff further represents that the initial delay in serving process was a cost-saving measure, in that plaintiff wanted to serve the Complaint and the

4

Amended Complaint simultaneously, thereby avoiding the cost of serving two documents and avoiding defendants' expenditure of resources attacking a pleading that would be superseded. Plaintiff delayed filing the Amended Complaint (which added plaintiff's Title VII claims) because she was awaiting a right to sue letter from the EEOC. Moreover, although plaintiff did not seek an extension of time before the deadline, this factor cannot be given much weight where, as here, the reason for the delay was that plaintiff was operating with reference to the old 120-day deadline. And finally, dismissing the Amended Complaint for failure to serve timely process would prejudice plaintiff, as plaintiff's FMLA and FLSA claims would then be time barred unless plaintiff could prove willful violations of those statutes. *See* 29 U.S.C. § 2617(c) (creating a general two-year statute of limitations for FMLA claims and extending the limitations period to three years only if the violation is willful); *id.* § 255(a) (same for the FLSA).

On balance, the relevant facts and circumstances of this case point towards finding good cause to extend plaintiff's time to serve process pursuant to Rule 4(m). Although the negligence of plaintiff's counsel is one relevant factor, it is not dispositive and in fact is outweighed by other relevant considerations here. The record reflects that defendants were served with process on May 24, 2016, four days after the Rule 4(m) deadline. It is therefore appropriate to extend plaintiff's deadline for service *ex post facto* to May 25, 2016, as a five-day extension of time is non-prejudicial and would have been granted had plaintiff requested it before the deadline. *See* Rule 6(b)(1), Fed. R. Civ. P. (permitting extensions of time for good cause if requested before the deadline passes).

**B.**

This does not end the analysis, however, as it is important to consider whether an extension of time is warranted even if plaintiff's excuse does not rise to the level of "good

cause." The parties dispute whether good cause is a necessary precondition to the extension of time to serve process, or whether a district court has discretion to enlarge the period for service of process even in the absence of good cause.

The language of Rule 4(m) supports the latter reading. As Rule 4(m)'s plain language makes clear, the presence of "good cause" for the failure to serve process on time renders mandatory a district court's extension of time to serve process. Yet, the portion of Rule 4(m) permitting a district court to "order that service be made within a specified time" is in no way connected to any good cause requirement. Thus, Rule 4(m) unambiguously permits an extension of time to serve process regardless whether a plaintiff can show good cause for delay. Many cases so held with respect to the previous version of Rule 4(m) before the 2015 Amendment. *See, e.g., Kurka*, 628 F.3d at 957; *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007); *Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005); *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002); *In re Sheehan*, 253 F.3d 507, 513 (9th Cir. 2001); *McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir. 1998); *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996); *Espinoza v. United States*, 52 F.3d 838, 840-41 (10th Cir. 1995).

Yet, the Fourth Circuit took a contrary view with respect to the pre-2015 Amendment version of Rule 4(m), concluding that "if the complaint is not served within [90] days after it is filed, the complaint must be dismissed absent a showing of good cause." *Mendez v. Elliot*, 45 F.3d 75, 78 (4th Cir. 1995). The Fourth Circuit reached this conclusion by assuming, without discussion, that Rule 4(m) had the same meaning as its predecessor, the former Rule 4(j), despite clear indications in the Advisory Committee Notes to the contrary. *See* 146 F.R.D. 401, 573 ("The new subdivision...authorizes the court to relieve a plaintiff of the consequences of an

application of this subdivision even if there is no good cause shown."). Notably, courts and commentators are virtually unanimous in the view that *Mendez* is wrong on this point.[1] Indeed, even the Fourth Circuit appears to consider *Mendez* to be wrong. *See, e.g., Hansan v. Fairfax Cnty. Sch. Bd.*, 405 F. App'x 793, 793-94 (4th Cir. 2010) (stating a rule contrary to *Mendez*). Yet, defendants contend that *Mendez* still controls and prohibits an extension of time to serve process unless plaintiff can establish good cause for the failure to serve process in a timely fashion. This argument is not new; whether *Mendez* remains good law in the Fourth Circuit is a debate that has raged since well before the 2015 Amendment to Rule 4(m). *Compare, e.g., Tann v. Fisher*, 276 F.R.D. 190, 196 (D. Md. 2011) (yes), *with, e.g., Hammad v. Tate Access Floors, Inc.*, 31 F. Supp. 2d 524, 527-28 (D. Md. 1999) (no). But at long last, with the promulgation of the 2015 Amendment to Rule 4(m), the matter can be laid to rest: *Mendez* is no longer controlling authority in this circuit.

The goal of statutory interpretation is to bridge the gap between a lawgiver's intended meaning and the interpreted meaning applied to a specific case. *See* Caleb Nelson, <u>Statutory Interpretation</u> 4 (2011) ("[O]ne of the criteria by which many people evaluate proposed techniques of statutory interpretation is whether, over the mine run of cases, use of the techniques will help avoid mismatches between the *intended* meaning and the *interpreted* meaning of statutory language."). Rule 4(m), as amended in 2015, is a rule different from its immediate predecessor. To be sure, both versions of the Rule share common features, but the two Rules were promulgated at different times by differently constituted Supreme Courts. Such

---

[1] The Supreme Court thinks *Mendez* is wrong. *See Henderson v. United States*, 517 U.S. 654, 663 (1996) (stating a contrary rule in *dicta*). Leading treatises think *Mendez* is wrong. *See, e.g.,* Wright & Miller, *supra*, § 1137 at 342 n.14 (2015) (characterizing *Mendez*'s holding and reasoning as "improper"). Other circuits think *Mendez* is wrong. *See, e.g., Thompson*, 91 F.3d at 21 n.1 (expressly rejecting *Mendez*, which "disregarded the plain language of rule 4(m)").

differences are not inconsequential, as meanings can change over time, especially when the speakers change. For example, if a rule against the filing of "duplicitous pleadings" were promulgated fifty years ago, it may well mean something quite different from an identical rule promulgated today. *See* <u>Webster's Third New International Dictionary</u> 702-703 (1993) (listing an older common meaning—deceptive—and a newer common meaning—"us[ing] two or more...where one is sufficient").

Although the new Rule 4(m) and the previous Rule 4(m) may well have the same meaning, statutory interpretation does not consist of the reflexive citation of old precedents any more than it consists of the reflexive citation of dictionaries.[2] The only way to know whether the newly amended Rule 4(m) should be read the same way as the pre-amendment Rule 4(m) is to determine what meaning the new Rule's promulgator intended to convey. This task requires "reference to the...context, 'structure, history, and purpose'" of the Rule, as well as "common sense." *Abramski*, 134 S. Ct. at 2267. Indeed, it may well be that linguistic and contextual clues show that the newly amended Rule 4(m) does not have the meaning ascribed to the previous Rule 4(m) in *Mendez*. If this is so, then the judicial duty is to give the new Rule 4(m) its intended meaning, not to conclude that *Mendez* answers a question about a Rule that did not exist at the time that case was decided. To borrow from Justice Holmes, "[i]t is revolting to have no better reason for a rule...than that [] it was laid down in the [past]," and "[i]t is still more revolting if

---

[2] *See, e.g., Torres v. Lynch*, 136 S. Ct. 1619, 1626 (2016) (observing that "staring at, or even looking up, the words 'described in' cannot answer" the interpretive question presented); *Angiotech Pharms. Inc. v. Lee*, --- F. Supp. 3d ---, 2016 WL 3248352, at *9 n.24 (E.D. Va. June 8, 2016) ("[D]ictionary definitions are not necessarily dispositive of a word's ordinary meaning, but they are valuable tools in approximating the sense in which linguistic communities use and understand words, and therefore can confirm that an understanding of a word is ordinary rather than idiosyncratic.") (citing *Struniak v. Lynch*, --- F. Supp. 3d ---, 2016 WL 393953, at *6 n.11 (E.D. Va. Jan. 29, 2016)); Nelson, *supra*, at 125-27 (discussing the proper use of dictionaries in statutory interpretation).

the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation." Oliver Wendell Holmes, The Path of the Law, 110 Harv. L. Rev. 991, 1001 (1997). As the analysis that follows illustrates, "the grounds upon which [*Mendez*] was laid down have vanished." *Id.*

As previously noted, the plain language of the newly amended Rule 4(m) allows a district court to extend the time to serve process even absent a showing of good cause. And of course, "[t]here can be no doubt 'that the plain language...provides the best evidence of legislative intent.'" *Struniak*, --- F. Supp. 3d ---, 2016 WL 393953, at *10 (quoting *Miller v. Carlson*, 768 F. Supp. 1331, 1335 (N.D. Cal. 1991) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431-32 (1987)). Thus, to give the language of the new Rule 4(m) its "ordinary, contemporary, common meaning" necessarily requires rejecting the conclusion reached in *Mendez* with respect to the prior version of Rule 4(m). *See Perrin*, 444 U.S. at 42.

Moreover, there is often reason to believe that where an interpretation of statutory language is well established, the subsequent enactment of similar or identical language is intended to capture and to reflect that well-established judicial gloss. *See, e.g., Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) ("When...judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its...judicial interpretations as well."). Particularly important for present purposes, the Supreme Court has reasoned that even absent a definitive interpretation from the Supreme Court, Congress can sometimes be understood to acquiesce in "the well-nigh unanimous view of the [lower] federal courts." *See Manhattan Props. v. Irving Trust Co.*, 291 U.S. 320, 336 (1934). The question then becomes whether it is more likely that the promulgators of the 2015 Amendment to Rule 4(m) intended to adopt *Mendez*'s idiosyncratic

9

and atextual interpretation, or whether the promulgators intended that the Rule take its ordinary meaning, the "well-nigh unanimous view" of the circuit courts of appeal. *See id.* Common sense provides the answer. *See Abramski*, 134 S. Ct. at 2267. To the extent the newly amended Rule 4(m) adopts and incorporates any judicial gloss, it surely adopts and incorporates the meaning ascribed to the Rule by the *dictum* of the Supreme Court and the holdings of the Second, Third, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, rather than the oft-criticized holding in *Mendez*.

If any doubt remains about the proper interpretation of the new Rule 4(m), an additional interpretive tool now exists that was not present at the time of *Mendez*, namely Rule 1, Fed. R. Civ. P. In relevant part, Rule 1 instructs that all of the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court…to secure the just, speedy, and inexpensive determination of every action and proceeding." That a lawgiver can promulgate rules of interpretation is largely uncontroversial; Congress supplies such rules every time it enacts a statutory definition. *See* Nelson, *supra*, at 554-56. Moreover, "a new statute can authoritatively communicate Congress's departure from past interpretati[ons]…without explicitly addressing those [interpretations]; it is within each new Congress's power to repeal…*by implication* no less than expressly." *Id.* at 562. In this regard, supplying a new and authoritative interpretive rule may operate in practice to abrogate a previous interpretation of a text just as if the text itself had been amended.

Courts have been quick to recognize the significance of the new Rule 1 in construing and administering the remaining rules. *See, e.g., El Encanto, Inc. v. Hatch Chile Co., Inc.*, --- F.3d ---, 2016 WL 3361487, at *2 (10th Cir. June 17, 2016) (citing Rule 1 in rejecting "an application of Rule 45 that would, by everyone's estimation, ensure only needless delay and expense"). This is

for the best, as it is precisely what Rule 1 requires. And Rule 1 has substantial force here. Simply put, interpreting Rule 4(m) to allow district courts to extend the time to serve process even absent a showing of good cause best effectuates Rule 1's command to construe and to administer the Federal Rules of Civil Procedure to promote the prompt and inexpensive resolution of litigation, insofar as the greater a district court's latitude to grant such extensions, the fewer cases that will be dismissed without prejudice only to be re-filed shortly thereafter. Thus, even if *Mendez* is understood as good law notwithstanding the adoption of a new Rule 4(m), Rule 1's directive would require the rejection of the Fourth Circuit's interpretive approach in *Mendez*. In other words, *at the very least* Rule 1's authoritative interpretive directive abrogates *Mendez*'s restrictive reading of Rule 4(m) by implication.

As the foregoing analysis shows, in light of the relevant linguistic and contextual clues surrounding the new Rule 4(m), *Mendez*'s restrictive interpretation of the scope of the prior Rule 4(m) is no longer the law of the Fourth Circuit. Accordingly, Rule 4(m) must be understood as permitting district courts to extend the time to serve process even absent a showing of good cause. For the same reasons as stated in Part II-A, *supra*, even if good cause does not exist such that an extension of time is mandatory, there is at least sufficient cause here to warrant an exercise of discretion to extend plaintiff's time to serve process.

### C.

A final issue warrants brief mention. Because the Amended Complaint is deemed timely filed as of May 24, 2016, the deadline to file a responsive pleading passed as of June 14, 2016. For the sake of efficiency and to reduce unnecessary expense, it is appropriate to construe—very generously, and very liberally—defendants' papers in support of Rule 4(m) dismissal as motions to extend the time to file responsive pleadings in the alternative to dismissal. Defendants' failure

to file a responsive pleading while litigating the Rule 4(m) issue presented here is sufficient to establish excusable neglect justifying an extension of time to file pursuant to Rule 6(b). *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) ("[I]t is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant.") (footnotes omitted); Black's Law Dictionary 508 (5th ed. 1979) ("excusable neglect" is "a failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court").

## II.

The occasional tendency of lawyers to fight all possible battles rather than to solve core problems is well illustrated by the fictional estate case *Jarndyce and Jarndyce*, a "scarecrow of a suit...so complicated, that no man alive knows what it means [and] no two...lawyers can talk about it for five minutes, without coming to a total disagreement as to all the premises." Charles Dickens, Bleak House 3 (Chapman & Hall 1907) (1853). After years of litigation, and upon final resolution of the case, the parties in *Jarndyce* found that "the whole estate [had] been absorbed in costs." *Id.* at 695. In order to avoid cases like *Jarndyce* that "drag [their] dreary length before the Court, perennially hopeless," the very first Federal Rule of Civil Procedure explicitly directs litigation to move promptly and economically. *Id.* at 4. Courts and parties must take that admonishment to heart.

For the foregoing reasons, plaintiff must be given a brief extension of time in which to serve process, and it is appropriate also to extend defendants' time to file a responsive pleading.

An appropriate Order has already issued.

Alexandria, Virginia
June 21, 2016

/s/
T. S. Ellis, III
United States District Judge